UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Henry James Johnson, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>John Doe, *Deputy*; Jane Doe, *Deputy*; Hennepin County; Hennepin County Sheriff's Office; and David Hutchinson, *Hennepin County Sheriff in his Official capacity*,<br><br>Defendants. | Civ. No. 22-1309 (JWB/ECW)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Henry James Johnson, Jr., Pro Se.

Jamil M. F. Masroujeh, Esq., and Sarah C. S. McLaren, Esq., Hennepin County Attorney's Office, counsel for Defendants Hennepin County, Hennepin County Sheriff's Office, and David Hutchinson.

This matter is before the Court on Defendants Hennepin County, Hennepin County Sheriff's Office, and David Hutchinson's Motion to Dismiss Plaintiff Henry James Johnson, Jr.'s Amended Complaint. (Doc. No. 12.) Mr. Johnson claims that two Hennepin County Sheriff's Deputies ("the Doe Deputies") violated his rights when they prevented him from attending his bail hearing, delaying his release from pretrial custody. (Doc. No. 6 ("Am. Compl.") ¶ 1.)

The Court partially grants and partially denies the motion. As to Hennepin County, the Sheriff's Office, and Sheriff Hutchinson, the Court grants the motion without prejudice on the claims against Hennepin County in Counts 1 and 2, and grants the

motion with prejudice on all other claims. As to the Doe Deputies, the Court denies the motion on the individual-capacity claims in Counts 1 and 2, and grants the motion without prejudice on the claim for punitive damages in Count 3.[1]

## BACKGROUND

In the fall of 2021, Mr. Johnson was detained at the Hennepin County Adult Detention Center pending trial. (Am. Compl. ¶ 4.) On the morning of November 4, 2021, Mr. Johnson attended a virtual court hearing in a separate matter. (*Id.* ¶ 11.) Following the hearing, Mr. Johnson asked Deputy Jane Doe if he had another hearing that day. (*Id.* ¶¶ 11, 13.) The deputy instructed Mr. Johnson to return to his living unit. (*Id.* ¶ 12.)

As Mr. Johnson continued to his cell, another detainee said, "These guards be tripping." (*Id.* ¶ 14.) Mr. Johnson replied, "Some people take their job too seriously." (*Id.*) The deputy overheard the exchange, asked Mr. Johnson to identify his cell number, and told him, "You will not be coming out for your hour." (*Id.* ¶¶ 15–16.)

Ten to fifteen minutes later, a second deputy (Deputy John Doe) announced that Mr. Johnson had a hearing. (*Id.* ¶ 17.) "[Johnson]'s not going to court," Deputy Jane Doe objected. (*Id.* ¶ 18.) The deputies then conferred, far enough from Mr. Johnson that he could not hear them. (*Id.* ¶ 20.) Following the discussion, Deputy John Doe went to the area where virtual hearings took place. (*Id.*) Mr. Johnson did not attend the hearing, but

---

[1] The Court recognizes that Hennepin County, the Sheriff's Office, and Sheriff Hutchinson do not explicitly argue to dismiss Mr. Johnson's claims against the Doe Deputies, other than as a byproduct of their arguments to dismiss the claims against themselves. For the sake of clarity and completeness, the Court nonetheless analyzes the sufficiency of Mr. Johnson's claims against the Doe Deputies.

2

his court-appointed counsel did. (*Id.* ¶¶ 22, 25.)

The next day, Mr. Johnson learned that his next court appearance would not be for nearly two months. (*Id.* ¶ 23.) He then contacted his attorney to change the court date. (*Id.* ¶ 24.) During that conversation, Mr. Johnson's attorney explained that Deputy John Doe told the court that Mr. Johnson refused to attend the November 4 hearing. (*Id.* ¶¶ 24–25.) Mr. Johnson gave his side of the story: the deputies "refused to let him go to court and lied to the Judge about the reason for [his] failure to appear." (*Id.* ¶ 25.)

Mr. Johnson's attorney secured an earlier hearing date on November 16, 2021, where Mr. Johnson appeared and received a bond. (*Id.* ¶¶ 27–28.) Mr. Johnson's girlfriend posted the bond, and Mr. Johnson was scheduled for release on November 19, 2021. (*Id.* ¶ 28.) Instead of being released on that date, Mr. Johnson was transferred to Ramsey County on November 22, 2021, due to a separate warrant. (*Id.*) Following a bail hearing in Ramsey County, Mr. Johnson again received a bond that his girlfriend posted, and Mr. Johnson was released. (*Id.* ¶ 29.)

A few months later, Mr. Johnson filed suit against the Doe Deputies in their individual and official capacities, and against Hennepin County, the Hennepin County Sheriff's Office, and Sheriff Dave Hutchinson in his official capacity (the "Hennepin Defendants"). (*See id.* ¶¶ 5–8.) Mr. Johnson claims that the deputies violated his civil rights (Count 1) and conspired to violate his civil rights (Count 2) by denying him his constitutional right to court access and delaying his release from custody. (*Id.* ¶¶ 1, 34–43.) Mr. Johnson also seeks punitive damages (Count 3). (*Id.* ¶¶ 44–46.)

The Hennepin Defendants have moved to dismiss the Complaint. (Doc. No. 12.)

3

## DISCUSSION

I. **Motion to Dismiss Standard**

To survive a motion to dismiss, a plaintiff must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the plaintiff pleads sufficient facts to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires a complaint to contain enough factual allegations "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A recitation of the elements of a cause of action, supported merely by conclusory allegations, is not sufficient. *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss, the Court accepts the well-pled allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). However, the Court is not required to accept a complaint's legal conclusions. *Iqbal*, 556 U.S. at 678.

II. **Claims against the Hennepin County Sheriff's Office, Official Claims against Sheriff Hutchinson, and Official Claims against the Doe Deputies**

As an initial matter, the Court dismisses with prejudice Mr. Johnson's claims against the Hennepin County Sheriff's Office, his official-capacity claims against Sheriff Hutchinson, and his official-capacity claims against the Doe Deputies. These claims are properly treated as claims against Hennepin County.

A. **The Hennepin County Sheriff's Office is not a suable entity**

County agency divisions cannot be sued; rather, Hennepin County itself is subject

to suit. *See Campbell v. Hennepin Cnty. Sheriffs*, No. 19-cv-1348 (DWF/ECW), 2020 WL 589547, at *7 (D. Minn. Jan. 21, 2020 (collecting cases)), *report and recommendation adopted*, 2020 WL 586770 (D. Minn. Feb. 6, 2020). As such, the Hennepin County Sheriff's Office is not a proper defendant here.

### B. Official claims against Sheriff Hutchinson and the Doe Deputies are treated as claims against Hennepin County

An official-capacity suit against a public employee is merely a suit against the public employer. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). Specifically, a lawsuit asserting official-capacity claims against the Hennepin County Sheriff is "merely a suit against his employer, Defendant Hennepin County." *Evenstad v. Cnty. of Hennepin*, No. 04-cv-1124 (JMR/FLN), 2006 WL 8445284, at *3 (D. Minn. May 22, 2006), *report and recommendation adopted*, 2006 WL 8445281 (D. Minn. July 20, 2006). The same applies to official-capacity claims against Hennepin County Sheriff's Deputies. *See Kaplan v. Harrington*, No. 22-cv-0640 (JRT/JFD), 2023 WL 1797872, at *6 (D. Minn. Feb. 7, 2023) (treating § 1983 claims against unnamed Hennepin County Sheriff's Deputies in their official capacities as "effectively brought" against Hennepin County).

Accordingly, the Court dismisses Counts 1 to 3 with prejudice as to the official-capacity claims against Sheriff Hutchinson and the Doe Deputies. Mr. Johnson may assert individual-capacity claims against Sheriff Hutchinson should he discover facts supporting such claims. Mr. Johnson's individual-capacity claims against the Doe Deputies in Counts 1 and 2 are not dismissed, as discussed below.

5

## II.     § 1983 Claim (Count 1)

Federal law provides a remedy when state officials, acting under the color of law, deprive citizens of their constitutional or legal rights. *See* 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must plausibly plead that: (1) the defendant acted under color of state law, and (2) the alleged conduct deprived the plaintiff of a constitutionally protected federal right. *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011). Here, Mr. Johnson alleges that the Doe Deputies wrongfully denied his constitutional right of court access.

For the Hennepin Defendants to be liable for the alleged violation, Mr. Johnson must also plausibly plead the elements of municipal liability from *Monell v. Dep't of Soc. Serv's of City of New York*, 436 U.S. 658 (1978). A county may be sued under § 1983 where the alleged unconstitutional action implements or executes a county policy or was the result of governmental custom. *See Monell*, 436 U.S. at 690.

### A.     Presence of counsel is not determinative

The Hennepin Defendants believe Mr. Johnson's claim fails at the outset because he was represented by counsel. They cite numerous cases to argue there can be no loss of court access here because Mr. Johnson's lawyer attended the bail hearing. However, the cited cases involve court-access claims by incarcerated individuals following conviction, not a pretrial detainee with a scheduled bail hearing.[2] Summarily applying those

---

[2]    The Court questions the Hennepin Defendants' representation that their cited cases stand for the proposition that an inmate *or pretrial detainee's* access to court is protected if they are represented by counsel. (*See* Doc. No. 21 at 5–6.) Those cases do not involve pretrial detainees whatsoever, and certainly not a pretrial detainee being prevented from attending a bail hearing. The Court does not even see dicta in those cases discussing whether representation of a pretrial detainee upholds the right of court access.

6

postconviction cases would ignore the pretrial nature of Mr. Johnson's claimed deprivation. The Court declines to do so here.

> **B.  Mr. Johnson plausibly pleads that he would have posted bail sooner had he attended his November 4 hearing**

Turning to the merits of Mr. Johnson's claim, the Court finds it plausible that the Doe Deputies deprived Mr. Johnson of his right to attend his bail hearing, and that had Mr. Johnson attended the hearing, he would have posted bail and been released sooner. The right to access the courts is well established. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996) (describing the right as "the fundamental constitutional right of access to the courts") (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). "A prisoner has access to the courts if the state provides the prisoner the capability to bring challenges before the courts." *Williams v. Norris*, 80 F. App'x 535, 536 (8th Cir. 2003).

Mr. Johnson alleges that the deputies kept him out of the bail hearing entirely, so he had no chance to post bail himself or otherwise participate in the process. Interference with the ability to post bail "falls under the Fourteenth Amendment umbrella that protects [the] right to 'post-arrest procedural guarantees' such as bail." *Simpson v. Gallant*, 231 F. Supp. 2d 341, 348 (D. Me. 2002) (citing *Brady v. Dill*, 187 F.3d 104, 108 (1st Cir. 1999)). "[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *cf. Booth v. Galveston Cnty.*, No. 3:18-CV-00104, 2019 WL 3714455, at *11–14 (S.D. Tex. Aug. 7, 2019) (reasoning for Sixth Amendment purposes that "[n]ot only is a bail hearing *a* 'critical

7

stage' in the criminal process, but it is arguably the *most* 'critical stage'") (emphasis in original), *report and recommendation adopted as modified*, 2019 WL 4305457 (S.D. Tex. Sept. 11, 2019).

Mr. Johnson alleges that each time he was able to attend a bail hearing (once in Hennepin County and again Ramsey County), he received a bond that was posted shortly thereafter. Accepting those allegations as true, it is reasonable to infer that the same would have occurred shortly after the November 4, 2021 hearing had the Doe Deputies not prevented Mr. Johnson from attending. Therefore, the Court does not dismiss Count 1 as it relates to the individual-capacity claims against the Doe Deputies.

### C. Mr. Johnson does not have sufficient information at this stage to plausibly plead that a policy or custom was involved

The Hennepin Defendants argue that Mr. Johnson's failure to identify any county policy or custom should be fatal to his Complaint. But the Eighth Circuit has rejected that argument, holding that a plaintiff does not need to "plead the specific existence of an unconstitutional policy or custom" to state a *Monell* claim. *See Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). "When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Id.*

A truly fatal deficiency would be "the complete absence of allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom[.]" *Id.* "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional

policy or custom." *Id.*

Although the Court understands that Mr. Johnson may not currently have enough information to specifically identify a policy or custom, his allegations fall short of supporting a reasonable inference that a policy or custom played a part in the Doe Deputies' actions. It may be that the deputies handled the alleged incident according to some governing policy or training, or based on how a conflict between detainee discipline and a scheduled court hearing had been handled before. If discovery were to reveal such a policy or custom, Mr. Johnson can revive his *Monell* claim against Hennepin County. For now, the Court dismisses Count 1 without prejudice as it relates to Hennepin County.

### III.   § 1983 Conspiracy Claim (Count 2)

To prove a § 1983 conspiracy claim, a plaintiff must show that: (1) the defendant conspired with others to deprive him of constitutional rights; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). The plaintiff must also prove a deprivation of a constitutional right or privilege to prevail on a § 1983 conspiracy claim. *Id.*

#### A.   As to the Doe Deputies

As the Court reasoned above, taking Mr. Johnson's allegations as true, the Doe Deputies conferred before Deputy John Doe attended the bail hearing and misrepresented that Mr. Johnson was refusing to attend. Based on the alleged order of events, it is plausible that the deputies discussed what Deputy John Doe would tell the court about Mr. Johnson that would explain his non-attendance. Deputy John Doe then followed

9

through at the hearing, and as a result Mr. Johnson could not post bail and be released until weeks later. Those allegations suffice to state the elements of a § 1983 conspiracy. Importantly, as explained next, the conspiracy is plausibly pled *only* as to the individual-capacity claims against the Doe Deputies.

### B. As to Hennepin County

As the conspiracy claim relates to Hennepin County, the Court must distinguish between Hennepin County's potential liability as a party to the alleged § 1983 conspiracy in Count 2 and its potential *Monell* liability for the alleged § 1983 violation in Count 1. The fundamental problem is this: if the alleged conspiracy involves Hennepin County employees acting in their official capacities (which the Court treats as claims against Hennepin County), the allegation essentially is that Hennepin County conspired with itself—which would seem to fail because a conspiracy requires agreement between at least two different actors.

The Eighth Circuit has not definitively ruled that a § 1983 conspiracy cannot be formed between two members of the same organization acting in their official capacities. *See generally Faulk v. City of St. Louis*, 30 F.4th 739, 748–50 (8th Cir. 2022). But when a conspiracy count adds nothing to a plaintiff's § 1983 claims for which a municipality faces *Monell* liability, the conspiracy claim "is inconsistent with well-established § 1983 principles of individual liability." *Id.* at 750 ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.") (quotation omitted).

Based on *Faulk*'s analysis and cautionary instruction, the Court views Count 2 as

adding nothing to Mr. Johnson's § 1983 claim against Hennepin County that is not already covered by Count 1. As currently pled, Hennepin County's involvement in the conspiracy is not alleged as anything other than through some policy or custom that may have guided the Doe Deputies. Because Mr. Johnson does not allege in what way Hennepin County independently joined the conspiracy, the Court dismisses Count 2.

## IV. Punitive Damages Claim (Count 3)

Mr. Johnson seeks punitive damages against all defendants in Count 3 of his Amended Complaint. (*See* Am. Cmplt. ¶¶ 44–46.) No independent cause of action for punitive damages exists under federal or Minnesota law. *Daywitt v. Minnesota Dep't of Hum. Servs.*, No. 17-cv-5574 (NEB/TNL), 2018 WL 8224922, at *10 (D. Minn. Dec. 14, 2018) (citations omitted), *report and recommendation adopted as modified*, 2019 WL 1417451 (D. Minn. Mar. 29, 2019). Rather, punitive damages are available as a remedy in some instances and not in others. *Id.* (quoting *Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 1000 (D. Minn. 2013)). On a § 1983 claim, punitive damages are only available to punish "willful or malicious conduct." *Id.* (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986)).

### A. Punitive damages are not available against a municipality

Punitive damages are not available against a municipality defendant, including a county, in a § 1983 lawsuit. *See In re Scott Cnty. Master Docket*, 672 F. Supp. 1152, 1163 n.1 (D. Minn. 1987). As stated above, the claims against the Hennepin County Sheriff's Office and the official-capacity claims against Sheriff Hutchinson and the Doe Deputies are properly treated as claims against Hennepin County. Because Hennepin

11

County cannot be liable for punitive damages, Count 3 is dismissed with prejudice as to the Hennepin Defendants and as to the official-capacity claims against the Doe Deputies.

### B. Punitive damages against the Doe Deputies can be revived later

The Court dismisses Count 3 without prejudice as to Mr. Johnson's individual-capacity claims against the Doe Deputies. The Court views Count 3 as giving notice of Mr. Johnson's intent to pursue punitive damages, not as an independent cause of action. *Daywitt*, 2018 WL 8224922, at *10. However, Mr. Johnson's allegations are conclusory and merely conform to the elements of punitive damages. Mr. Johnson can revive Count 3 on a more fully developed record, should he discover facts showing that the Doe Deputies acted willfully or maliciously in violating his rights.

## ORDER

**IT IS HEREBY ORDERED** that Defendants Hennepin County, Hennepin County Sheriff's Office, and David Hutchinson's Motion to Dismiss (Doc. No. 12) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Court **GRANTS** Defendants' motion as to Plaintiff Henry James Johnson, Jr.'s claims against Hennepin County in Counts 1 and 2 of the Amended Complaint (Doc. No. 6), and Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE** as to Hennepin County;

2. The Court **GRANTS** Defendants' motion as to Plaintiff's claim for punitive damages against Hennepin County, and Count 3 is **DISMISSED WITH PREJUDICE** as to Hennepin County; and

3. The Court **GRANTS** Defendant's motion as to all claims against the

12

Hennepin County Sheriff's Office, all claims against David Hutchinson in his official capacity, and all official-capacity claims against the unidentified deputies, and those claims are **DISMISSED WITH PREJUDICE** in their entirety;

4. The Court **DENIES** Defendants' motion as to Plaintiff's claims against the unidentified deputies in their individual capacities in Counts 1 and 2 of the Amended Complaint; and

5. The Court **GRANTS** Defendants' motion as to Plaintiff's claim for punitive damages against the unidentified deputies in their individual capacities in Count 3 of the Amended Complaint, and Count 3 is **DISMISSED WITHOUT PREJUDICE** as to the unidentified deputies in their individual capacities.

Date: June 30, 2023

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge